STATE DIVISION OF HUMAN RIGHTS, on Complaint of WANDA THOMPSON, Petitioner, v HATCH ASSOCIATES CONSULTANTS, INC., Respondent.

The Division may not dismiss a complaint upon a finding of no probable cause "when the facts revealed in the investigation do not 'generate conviction in and persuade a fair and detached fact finder' that there is no substance in the complaint". (*State Div. of Human Rights v Blanchette,* 73 AD2d 820, 821.) On this record, we conclude that the Division's determination of no probable cause lacks a rational basis (*see, State Div. of Human Rights v Stanmor Liq. Co.,* 107 AD2d 1056).

In her complaint, Wanda Thompson alleged that she was laid off from her employment as construction secretary because she was black. The record shows that on January 4, 1978, petitioner began working for the respondent in its main office as a temporary secretary, and on March 1, 1978, she was promoted to the position of transit secretary. On February 2, 1979 she was asked to accept the position of construction secretary, located in a field office. Such positions are temporary. The president of the re-

spondent stated that petitioner was transferred in part because her work as transit secretary was not fully satisfactory and that petitioner was "encouraged" to take the field position; "[i]f she had refused she would have been terminated." The manager of administration, however, specifically denied that petitioner was transferred to a field position because she couldn't handle the position of transit secretary, asserting that the transfer was prompted by petitioner's knowledge of project requirements and procedures. At the same time petitioner went to work in a field office, respondent reorganized its secretarial staff. Four months later, a white employee with less seniority than petitioner assumed her position as transit secretary. The field office in which petitioner worked was located in a trailer, with inadequate heat, no running water and only a chemical toilet available to service the needs of all field personnel as well as the construction workers. Petitioner spent five months at that site and was then transferred to another field site where the working conditions, although improved, were still poor. At a time when petitioner's immediate supervisor rated her job performance as excellent, petitioner was receiving less pay than any Caucasian secretary employed by respondent. On April 9, 1981, petitioner was told that she was being terminated because her position was being abolished.

Respondent was required to hire a certain percentage of minority workers to comply with Federal equal employment opportunity laws and regulations. Petitioner was the only secretary respondent had sent to work in a field office and the two other clerical employees, clerks/typists, located in field offices, were also members of minority groups.

The conclusion that respondent discriminated against petitioner because of her color when it discharged her could be inferred from the circumstances surrounding her original transfer to a field office, from her lower rate of pay compared with the rates of pay of Caucasian employees of the secretarial staff and from the fact that respondent placed only those clerical employees who were members of minority groups in the temporary field positions. While the Division's expertise in evaluating discrimination claims may not be lightly disregarded (*State Off. of Drug Abuse Servs. v State Human Rights Appeal Bd.,* 48 NY2d 276, 284), "discrimination is rarely so obvious or its practices so overt that recognition of it is instant and conclusive, it being accomplished usually by devious and subtle means". (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 183.) Upon the record before us, we cannot say that the complaint lacks merit as a matter of law. It was, therefore, arbitrary and

capricious for the Division to dismiss the complaint. (Proceeding pursuant to Executive Law § 298.) Present — Hancock, Jr., J. P., Doerr, Boomer, Green and O'Donnell, JJ.